| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAUL AYALA, JR. | MOTION IN LIMINE |

Defendant Raul Ayala, Jr. hereby respectfully moves this Honorable Court pursuant to Rule 402 of the Federal Rules of Evidence for an order *in limine*. Mr. Ayala is charged with the manufacture and possession of child pornography in violation of 18 U.S.C. §§ 2251(a) & (e) and § 2252A(a)(5)(B). The trial is currently set for January 13, 2020. This Court should not permit the government to introduce evidence of Mr. Ayala's subjective intent in creating the photographs at issue, because subjective intent is not relevant when determining whether an image constitutes child pornography under the narrow federal definition. According to the Government's pending motion to continue the trial [DE 38], the government will seek to introduce allegations of hands-on offending—even though no molestation is depicted in the images charged in Count One. Any allegations of hands-on offending not depicted in the images irrelevant—whether an image is child pornography must be based on the contents within the four corners of the image. Because any evidence of Mr. Ayala's subjective intent is not relevant, it is inadmissible. Fed. R. Evid. 402.

## ARGUMENT

The federal child pornography law bans images of sexual acts by children. *See* 18 U.S.C. § 2251(a) (barring depictions of "sexually explicit conduct" by minors). However, it does not ban all

1

images depicting child nudity. As the accompanying Senate Report explained, the phrase "'sexually explicit conduct' was more tightly drawn so as to include only those activities where the child was engaged in sexually-oriented acts." S. Rep. 95-438, at 13. Thus, the federal child pornography law does not ban all child images that some may deem inappropriate. Instead, the definition of child pornography is narrow: It must depict "(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) *lascivious* exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A) (emphasis added).

By its plain terms, the statute "requires more than mere nudity, because the phrase 'exhibition of the genitals or public area' is qualified by the word 'lascivious.'" *United States v. Courtade*, 929 F.3d 186, 191 (4th Cir. 2019) (quotation marks and citation omitted). A "lascivious exhibition" means "a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer." *Id.* at 192 (quotation marks and citation omitted).

Recognizing that applying the term "lascivious exhibition" is "not always easy," some courts have relied upon a six-factor test articulated in the district court decision of *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986) (explaining that the factors are neither controlling nor exhaustive).[1] *Courtade*, 929 F.3d at 192. However, as the Fourth Circuit has observed, "the *Dost* factors have been subject to criticism over the years." *Id.* (citing *United States v. Frabizio*, 459 F.3d

---

[1] The *Dost* factors include (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; (2) whether the setting of the visual depiction is sexually suggestive, *i.e.*, in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

2

80, 88 (1st Cir. 2006) (observing that the *Dost* factors "have fostered myriad disputes that have led courts far afield from the statutory language"). Indeed, the sixth *Dost* factor, which "asks whether the depiction is intended or designed to elicit a sexual response in the viewer," is "[p]articularly divisive" because it "potentially implicates subjective intent." *Id. (*citing *United States v. Brown*, 579 F.3d 672, 682-83 (6th Cir. 2009) (explaining that "[s]ome courts have accepted arguments that lasciviousness should be determined from the image alone" and "[o]ther courts have explicitly avoided the question"). To be sure, the Seventh Circuit has expressly "discourage[d] the use of the *Dost* factors." *United States v. Price*, 775 F.3d 828, 831 (7th Cir. 2014). And scholars note that "the *Dost* test has produced a profoundly incoherent body of case law." Amy Adler, *Inverting the First Amendment*, 149 U. Pa. L. Rev. 921, 953 (2001).

The Fourth Circuit has not adopted the *Dost* test or ruled on whether subjective intent may be considered in construing the term "lascivious exhibition." *Courtade*, 929 F.3d at 192 ("[W]e need not venture into the thicket surrounding the *Dost* factors or define the parameters of any subjective-intent inquiry[.]"). This Court should interpret the term "lascivious exhibition" consistent with the statutory text and Congressional intent and join other courts holding that subjective intent is irrelevant in determining whether an image meets the definition of child pornography. *See, e.g.*, *United States v. Kemmerling*, 285 F.3d 644, 646 (8th Cir. 2002) ("We emphasize that the relevant factual inquiry in this case is not whether the pictures in issue appealed, or were intended to appeal, to Mr. Kemmerling's sexual interests but whether, on their face, they appear to be of a sexual character."); *United States v. Amirault*, 173 F.3d 28, 34-35 (1st Cir. 1999) ("[I]n determining whether there is an intent to elicit a sexual response, the focus should be on the objective criteria of the photograph's design."); *State v. Whited*, 506 S.W.3d 416, 419 (Tenn. 2016) ("The material at issue must be evaluated based on what is depicted, without reference to the defendant's subjective

3

intent . . . ."). Such a holding would avoid the absurd results and constitutional concerns that consideration of subject intent would entail. *Courtade*, 929 F.3d at 192.

### A. The statutory definition does not implicate subjective intent.

The text of 18 U.S.C. § 2256(2)(A) shows that subjective intent is irrelevant to the definition of child pornography. First, as already noted, mere child nudity is not enough to meet the statutory definition. *Courtade*, 929 F.3d at 191 ("Based on the statutory language, then, that Jane Doe appears nude in the video cannot suffice to prove that the video meets the statutory definition."). The phrase "lascivious exhibition of the genitals" must be also interpreted in light of the four categories preceding it, given the canon of *noscitur a sociis*: "[A] word is known by the company it keeps." *Yates v. United States*, 135 S. Ct. 1074, 1085 (2015). In other words, "lascivious exhibition of the genitals" must be harmonized with the other identified forms of "sexually explicit conduct": "sexual intercourse," "bestiality," "masturbation," and "sadistic or masochistic abuse." These are graphic sexual terms, and a "lascivious exhibition" must be equally graphic.

This statutory definition emphasizes the sexual nature of the image itself—not the subjective intent of the person who created the image. To be sure, the actual statutory language says nothing about the subjective intent of the viewer or photographer. That omission is no accident. Congress knew how to put subjective intent at issue: It did so, for instance, in the federal voyeurism statute, which applies to anyone with "the intent to capture an image of a private area of an individual without their consent, and [who] knowingly does so under circumstances in which the individual has a reasonable expectation of privacy." 18 U.S.C. § 1801. These statutory differences are telling. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012) ("Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally."). Moreover, given the specific types of objectively sexual conduct

4

described in the child pornography definition, deeming an image "lascivious" based on the defendant's arousal alone would flout statutory canons designed to prevent courts from "giving unintended breadth to the Acts of Congress." *Gustafson v. Alloud Co.*, 513 U.S. 561, 575 (1995) (quotation marks omitted).

Notably, in drafting the definition, Congress specifically declined to put the defendant's subjective intent at issue. Congress rejected proposed language that would have prohibited depicting child nudity "for the *purpose* of sexual stimulation or gratification of any individual who may view such depiction." S. Rep. 95-438, at 11 (emphasis added). Its rejection of this language forecloses the conclusion that it silently meant for the text to invoke subjective intent. *See, e.g.*, *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2520 (2015) (interpreting Fair Housing Act to include disparate-impact standard when "Congress rejected a proposed amendment that would have eliminated disparate-impact liability for certain zoning decisions"). Instead, Congress used the "lewd exhibition" language drawn from the Supreme Court's objective test for obscenity. S. Rep. 95-438, at 11 (citing *Miller v. California*, 413 U.S. 15 (1973)). In so doing, Congress spoke loud and clear: "Private fantasies are not within the statute's ambit." *United States v. Wiegand*, 812 F.2d 1239, 1245 (9th Cir. 1987). Accordingly, the text and legislative history of the statute show that subjective intent is irrelevant to the consideration of whether an image constitutes child pornography.

**B. Consideration of subjective intent would produce absurd results and raise constitutional concerns.**

If the legality or illegality of a particular image turned on the subjective intent of the person who created it, the results would be absurd. Possessing an identical photo or video might be legal if it were created by one person, but illegal if it were created by someone else. As the First Circuit has noted, if "subjective reaction were relevant, a sexual deviant's quirks could turn a Sears catalog into

5

pornography." *Amirault*, 173 F.3d at 34. This would make it impossible to apply and interpret the definition consistently and reliably. Even worse, a person who possessed the image but did not create it could be held criminally liable based on the subjective intent of the producer. Holding the viewer liable for the subjective intent of the producer would raise serious concerns under both the Due Process Clause and the First Amendment. The doctrine of constitutional avoidance "counsel[s] that ambiguous statutory language be construed to avoid serious constitutional doubts." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009). The Supreme Court has already applied the constitutional avoidance doctrine in the context of § 2252's mens rea requirement, which was necessary to protect the defendants' due process rights. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994) (reading the statute to require knowledge of performer's ages because "a statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts"). Similar protection is necessary here, lest someone possess an otherwise non-lascivious image that transforms into child pornography based on the subjective thoughts and desires of the person who filmed it.

Relying on a defendant's or third-party's subjective intent would also "pose a substantial issue of validity under the First Amendment." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 576 (1988). The First Amendment forbids the government to "premise legislation on the desirability of controlling a private person's thoughts," *Stanley v. Georgia*, 394 U.S. 557, 566 (1969), and even decisions upholding laws barring possession of child pornography disclaim "a paternalistic interest in regulating [the defendant's] mind," *Osborne v. Ohio*, 495 U.S. 103, 109 (1990). Indeed, as the Supreme Court has recognized in the context of child pornography, "First Amendment freedoms are most in danger when the government seeks to control thought or to justify its laws for that impermissible end. The right to think is the beginning

6

of freedom, and speech must be protected from the government because speech is the beginning of thought." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2002). Yet if subjective intent were relevant, possessing an otherwise legal image would become illegal based on the thoughts of the person who created it. To avoid these constitutional concerns, this Court should construe the definition as Congress wrote it and limit the inquiry to the four corners of the image, so that a defendant's guilt or innocence does not "turn on whether the maker or viewer of an image was sexually aroused." *United States v. Steen*, 634 F.3d 822, 829–30 (5th Cir. 2011) (Higginbotham, J., concurring).

In summary, Congress *could* have written a broad law that criminalizes any depiction of child nudity created with the intent to be sexually aroused. But, that is not the law that Congress actually wrote. Congress barred depictions of sexually explicit conduct, and it did not link that inquiry to the defendant's subjective intent. Because the definition of child pornography does not implicate the subjective intent of the person who produces the image in question, consideration of subjective intent is irrelevant. Accordingly, this Court should exclude as irrelevant evidence of Mr. Ayala's subjective intent in creating the images at issue.

## CONCLUSION

WHEREFORE, Mr. Ayala respectfully requests the Court for an order *in limine* prohibiting the government from introducing evidence of his subjective intent in creating the images at issue— including allegations of molestation not depicted in any image.

Respectfully requested this 6th day of January, 2020.

G. ALAN DUBOIS
Federal Public Defender

*/s/ Katherine E. Shea*
KATHERINE E. SHEA

7

Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Kat_Shea@fd.org
Member of New York Bar
LR 57.1 Appointed Counsel

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served upon:

CHARITY L. WILSON
Assistant United States Attorney
United States Attorney's Office
Eastern District of North Carolina
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601

by electronically filing the foregoing with the Clerk of Court on January 6, 2020, using the CM/ECF system which will send notification of such filing to the above.

    This the 6th day of January, 2020.

                */s/ **Katherine E. Shea***
                KATHERINE E. SHEA
                Assistant Federal Public Defender
                Attorney for Defendant
                Office of the Federal Public Defender
                150 Fayetteville Street, Suite 450
                Raleigh, North Carolina 27601
                Telephone: 919-856-4236
                Fax: 919-856-4477
                E-mail: Kat_Shea@fd.org
                Member of New York Bar
                LR 57.1 Appointed Counsel