UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:19-CR-04-1-BO

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | RESPONSE TO MOTION |
| | ) | IN LIMINE |
| RAUL AYALA JR. | ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, herein responds to the Defendant's Motion in Limine (DE 39).

## Factual Background

On May 27, 2018 the Fuquay-Varina Police Department responded to a home regarding a report of sexual abuse of a nine-year-old victim (L.H.). Officer Hyman met with L.H.'s parents. The parents reported to Officer Hyman that, while watching a movie with their children the evening before, L.H. made a comment that was sexual in nature and caused them to question L.H. – a nine-year-old boy – about his knowledge of sex. L.H. told his parents that his grandfather, the Defendant, had been touching his penis both in the bathtub and in L.H.'s bed. Specifically L.H. reported that the Defendant would grab and hold L.H.'s penis until "it got hard". L.H. disclosed that the Defendant asked L.H. to touch the Defendant's penis but L.H. refused. L.H. indicated this behavior had been going on for a couple of years. L.H.'s parents attempted to call the Defendant on the telephone to discuss the abuse, but were unable to reach the Defendant that evening.

The following day, L.H.'s mother, the biological daughter of the Defendant, was able to reach the Defendant by phone. When she confronted the Defendant about L.H.'s accusations, the Defendant said that he did not deny the conduct, but also that he and L.H. had different interpretations of the touching. The conversation between the Defendant and L.H.'s mother ended when the Defendant hung up on L.H.'s mother. The Defendant then texted L.H.'s mother and indicated that, if the police were called, he would turn himself in, and that he did not want to hurt L.H. any further.

On May 30, 2018, L.H.'s parents received an email from the Defendant. In the email, the Defendant admitted to touching L.H.'s penis but denied having sex with L.H. The Defendant said he would wash L.H.'s penis more vigorously than needed and would also sometimes touch L.H.'s penis in the bed, although he would stop when L.H. got upset. The Defendant admitted in the email to taking photographs of L.H. nude, although the Defendant characterized the photographs as "innocent."

On May 31, 2018, Detective Perna, of the Fuquay-Varina Police Department, obtained a search warrant for the Defendant's residence. The search warrant sought out any evidence related to the sexual molestation of L.H., and any other evidence related to child pornography. During the execution of the search warrant, Detective Perna conducted a voluntary non-custodial interview of the Defendant. The interview is audio and video recorded. During the course of the interview, the Defendant admitted that he molested L.H. He indicated that he began touching

2

L.H.'s private area when the family lived in Louisiana,[1] approximately two years prior to the interview. The Defendant said that he would scrub L.H.'s body when L.H. was taking a bath and his penis would become erect. The Defendant claimed both he and L.H. thought it was funny so he kept doing it. The Defendant admitted to touching L.H.'s penis on about 8 or 9 occasions. He admitted he would also touch L.H.'s penis when he and L.H. slept in the same bed. The Defendant admitted that he put his mouth on L.H.'s penis on at least one occasion. The Defendant told Detective Perna that he had fondled L.H. 3 or 4 times in the bathtub when the family lived in Fuquay-Varina, and that he was trying to be discrete about the conduct. The Defendant admitted that he would get an erection when he fondled L.H. The Defendant also admitted that he is bisexual and is attracted to younger males.

After the interview, Detective Perna and other law enforcement officers went to the Defendant's house to execute the search warrant. While there, they seized 51 digital media devices. Forensic analysts found lascivious images of L.H. on the Defendant's computer and hard drives. Some of the nude images of L.H. were "body shots" and did not even depict L.H.'s face, but instead showed from the neck down to include his genitals. Officers also found approximately 2,000 images and 198 videos of child pornography unrelated to L.H.

---

1 The victim's family lived in Louisiana until June 2017 when they moved to Fuquay-Varina, North Carolina. The Defendant and his wife moved to Harnett County, North Carolina in March 2018.

3

Officers also seized a briefcase from the attic that was attached to a pulley system for easy access. The briefcase also contained, among other items, two paper advertisements for child pornography that depicted children being sexually abused, and approximately thirty old Polaroid photographs of nude teenage boys, some of which have now been identified.

On January 9, 2019, the Grand Jury indicted the defendant with one count of producing child pornography, in violation of Title 18 U.S.C. § 2251(a) and (e), and one count of possessing child pornography in violation of Title 18 U.S.C. § 2252A(a)(5)(B). The Defendant pled not guilty, and the trial is set for the March trial term.

## **Legal Argument**

According to the defendant's voluntary statement to police, and Defendant's instant Motion *in Limine*, the Defendant will to argue at trial that he did not intend to, nor did he actually produce, "sexually explicit" images of L.H. – that he is simply a well-meaning grandfather taking innocent headless nude body shots of his grandson. This is all misunderstanding. The Defendant's tactic is clear – assert an innocent image defense, and obtain a ruling that prevents the United States from rebutting the same. The Defendant attempts to narrow the theory of admissibility to a single issue, namely, whether his own prior molestation of the victim helps prove the child pornography meets the statutory definition of "child pornography."

The Defendant's arguments fail for a number of reasons set forth below. First, the defendant's prior sexual molestation of his grandson is relevant to show the

4

images were "intended or designed to elicit a sexual response in the viewer" – one of the legal factors used to prove that an image is a lascivious exhibition of the genitals. Second, the abuse is intrinsic to the charged offenses because it is inextricably intertwined with offenses because it involves the very same criminal behavior against the very same victim at the very same location. Finally, the evidence is highly relevant to show the Defendants purpose for taking the pictures – an element that the Fourth Circuit requires the United States to prove in this case.

### A. The Elements of Production and Possession of Child Pornography

The elements of Production of Child Pornography in violation of 18 U.S.C. §2251(a) and (e) are that: (1) the defendant employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct; (2) the defendant acted *with the purpose* of producing a visual depiction of such conduct and (3) the visual depiction was produced using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2251(a) (emphasis added).

The elements of Possession of Child Pornography in violation of 18 U.S.C. §2252A(a)(5)(B), are that: (1) the defendant knowingly possessed an item or items that contains an image of child pornography; (2) the material was mailed, shipped or transported using any means or facility of in interstate or foreign commerce by any means, including by computer; and OR that the material was produced using materials that had been mailed, shipped or transported in or affecting interstate or

5

foreign commerce by any means, including by computer and (3) when the defendant possessed the material, the defendant knew the material was child pornography.

> **B. The Defendant's Prior Molestation of the 9-year-old Victim Depicted in the Images is Relevant and Admissible Under <u>Dost</u> to Show the Images Were "Intended or Designed to Elicit a Sexual Response in the Viewer."**

The United States must prove that the defendant possessed and produced images of minors engaged in sexually explicit conduct. 18 U.S.C. §§ 2251(a), 2252A(a)(5)(B). Sexually explicit conduct is defined as "actual or simulated (1) sexual intercourse, (2) bestiality, (3) masturbation, (4) sadistic or masochistic abuse, (5) lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A). Lascivious exhibition is defined further as "tending to excite; lust; lewd; indecent; or obscene." <u>Sims v. Labowitz</u>, 877 F.3d 171, 182 (4th Cir. 2017) (citing Black's Law Dictionary (10th ed. 2014).

The Fourth Circuit has found the application of the <u>Dost</u>[2] factors to be helpful guideposts to determine whether a particular image is 'lascivious' in nature. <u>Id</u>. The Court in <u>Dost</u> expressed that whether an image was lascivious must be determined on a case-by-case basis. <u>Dost</u>, 636 F. Supp. At 832. Specifically the Court articulated six non-exhaustive factors:

> (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

---

[2] <u>United States v. Dost</u>, 636 F. Supp. 828, 832 (S.D. Cal. 1986), announced six factors to help the trier of fact determine whether an image was lascivious.

6

(2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

(3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

(4) whether the child is fully or partially clothed, or nude;

(5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

(6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

Id.

The sixth Dost factor is most relevant here. To be clear, the legal issue in this subsection, namely, whether a defendant's subjective intent when he created the image is relevant to the Dost factor analysis, is expressly an open question in the Fourth Circuit. United States v. Courtade, 929 F.3d 186, 192 (4th Cir. 2019), as amended (July 10, 2019), cert. denied, No. 19-428, 2020 WL 129578 (U.S. Jan. 13, 2020) (holding that "we need not venture into the thicket surrounding the Dost factors or define the parameters of any subjective-intent inquiry, because we can dispose of this case based on the objective characteristics of the video alone.") The Circuit Courts of Appeal are split on this issue.

Nevertheless, this Court should follow numerous other well-reasoned Circuit Courts of Appeal that have held that "contextual" evidence from outside the "four corners" of the visual depiction is critical, especially where the defendant has actually participated in the visual depiction's production. See e.g. United States v. Larkin,

7

629 F.3d 177, 183-184 (3d Cir. 2010) (considering the fact that the defendant had sent the images over the Internet to other pedophiles); United States v. Brown, 579 F.3d 672, 682-83 (6th Cir. 2009) (considering the circumstances of production of the images and other contemporaneous images of same victim); United States v. Overton, 573 F.3d 679, 689 (9th Cir. 2009) (considering the circumstances of production of the images); United States v. Wallenfang, 568 F.3d 649, 659 (8th Cir. 2009) (considering the recipients of produced images). "Ignoring the contextual evidence construes the statute too narrowly as it inevitably fails to capture behavior that is 'intended' to exploit children." Brown, 579 F.3d at 683. Particularly relevant here, the Wolf Court held "strict adherence to a four corners test could harm criminal defendants in some circumstances by limiting consideration of contextual evidence that would show that images are art or innocent family photographs." Id., citing United States v. Wolf, 890 F.2d 241, 247 (10th Cir. 1989).[3]

Even under the "limited context" approach that the Sixth Circuit has adopted, the evidence would be admissible here. The Sixth Circuit approach "limits the consideration of contextual evidence to the circumstances directly related to the taking of the images."[4] Brown, 579 F.3d at 683-84. Relying on this test, the Brown

---

[3] The Defendant here wants to portray himself as a well-meaning grandfather who took "innocent" nude body shots. If the United States is prevented from presenting evidence or argument related to the context of the image, the defendant should be similarly prevented from raising this defense at trial.

[4] The Brown Court held "[i]n sum, while the context in which an image was taken likely helps a factfinder understand whether an image was intended to elicit a sexual response in the viewer, there is a countervailing and significant risk that a context-specific test could reach too broadly and

8

court reviewed a large volume of photographs produced by the defendant of his nude step-granddaughters and found that the evidence supported the district court's sentencing conclusion that the images at issue were lascivious. Id. at 684. With respect to those nude photographs deemed "borderline," the court considered other contemporaneous photographs in reaching its conclusion that they were child pornography. "[T]he fact that Defendant took at least one clearly lascivious photograph of one of his step-granddaughters casts doubt upon any contention that the photographs were innocent family photographs and could help a factfinder understand Defendant's intent in taking and viewing any 'borderline' photographs. While this fact alone would not make otherwise innocuous pictures lascivious, it provides 'context that reinforces the lascivious impression.'" Id., quoting United States v. Rivera, 546 F.3d 245, 250 (2d Cir. 2008).

Here, the Court should admit the prior molestation. This is not a case about which, for example, the Brown Court was concerned. Specifically, the Brown Court was concerned about "factors that do not relate directly to the taking of the images, such as past bad acts of the defendant, the defendant's possession of other pornography (pornography of another type or of other victims), and other generalized facts that would relate only to the general 'unseemliness' of the defendant." 579 F.3d

---

'over-criminalize' behavior. In light of these competing concerns, we find that it is appropriate to apply a 'limited context' test that permits consideration of the context in which the images were taken, but limits the consideration of contextual evidence to the circumstances directly related to the taking of the images. 579 F.3d at 683.

at 684. This evidence does not relate, however, to "general unseemliness of the defendant." Instead, it relates to the same victim suffering the same abuse in the same place. The evidence is thus highly relevant and highly probative of whether the image was designed to excite lustfulness or sexually stimulate the viewer.

Even if the Court does not reach this particular legal issue, which is undecided in the Fourth Circuit, the evidence is highly relevant and probative for at least the two other reasons that follow.

    **B.    The Defendant's Prior Molestation of the Victim is Inextricably Intertwined with the Charged Offenses Because the Molestation Is Part of the "Same Criminal Episode" and "Forms an Integral and Natural Part of the Witness's Accounts of the Circumstances Surrounding the Offenses for Which the Defendant was Indicted."**

"[O]ther criminal acts are intrinsic when they are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged. And such evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." United States v. Bush, 944 F.3d 189, 195–96 (4th Cir. 2019) (internal citations and quotations omitted); United States v. McBride, 676 F.3d 385, 396 (4th Cir. 2012) ("Evidence of uncharged conduct arising out of the same series of transactions as the charged offense . . . do[es] not qualify as evidence of 'other crimes' subject to scrutiny under Rule 404(b)."). The Fourth Circuit has also held that "evidence is intrinsic when it serves to complete the story of the crime on trial .

10

. . and evidence of other inculpatory acts is intrinsic if both acts are part of a single criminal episode." Bush, 944 F. 3d at 196. "[A]cts intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence." Id.

To state the standard is to answer the question here – the Defendant's prior molestation is inextricably intertwined with his production and possession of child pornography related to L.H. The Defendant's abuse of his grandson was indeed part of a single and ongoing criminal episode. The Defendant's photographing his grandson nude was just one part of that ongoing criminal episode. Moreover, it is certainly an "integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." It would be tough to imagine how the victim could testify about the Defendant taking the image, but not testify to the surrounding circumstances of the creation of the images. What was the relationship between the two? How did the picture come about? How did the Defendant gain access to the victim? All of these questions are inextricably intertwined with the charged offense.

C. **The Evidence of the Defendant's Prior Molestation of the Victim is Highly Relevant Under Fed. R. Evid. 414 and 404(b) To Show the Defendant Took the Pictures "With the Purpose of Producing" a Lascivious Exhibition of the Genitals.**

Again, for reasons set forth above, the Court should admit the evidence because it is relevant to the Dost factor analysis, and because it is inextricably intertwined with the charged offenses, so the Court need not engage in a 414/404(b) analysis. Nevertheless, the Defendant's conduct is critical for a number of other purposes.

11

Under Fed. R. Evid. 414, "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant," including propensity. Id. Under Fed. R. Evid. 404(b), prior acts are admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," but are not admissible to show propensity. Id.

Federal Rule of Evidence 404(b) is a rule of inclusion. United States v. Powers, 59 F.3d 1460, 1464 (4th Cir. 1995). Unless evidence of a prior bad act is admitted for the sole purpose of proving criminal disposition, it should be admitted. Id. The test for admission of 404(b) evidence is (1) whether the prior bad act evidence is relevant to an issue separate from character; (2) whether the prior bad act is necessary part of the crime or the context of the crime and (3) reliable.[5] Id. If those elements are satisfied, the Court then engages in a balancing test pursuant to Fed. R. Evid. 403. Id. at 1464, 1467. The Fourth Circuit has stated clearly that if the government must prove the defendant's intent, prior bad acts showing a willingness to commit the act are probative. Sparks v. Gilley Trucking Co., 992 F.2d 50, 52 (4th Cir. 1993). If evidence of a prior bad act is relevant to a material fact in the case, it is admissible even if it may also tend to show a character trait. Id.

---

[5] The defendant himself admitted to the prior molestation to multiple people, and it was corroborated by the victim, so reliability is not in question and will not be discussed further.

12

Case 5:19-cr-00004-BO   Document 42   Filed 01/22/20   Page 12 of 17

All Fed. R. Evid. 414/404(b) evidence is not created equal – some evidence has significantly more probative value, and is more closely related to the specific case, whereas other 414/404(b) has more tangential relevance or is relevant mostly for propensity. This case clearly falls into the former category – it is highly relevant to show a critical and required element of the charged offenses. To determine how probative this particular evidence is here, it is critical to point out what the Fourth Circuit has required the United States to prove about intent in a Production of Child Pornography case. Contrary to the Defendant's suggestion, this case is about much more than just whether the images of L.H. meet the statutory definition of child pornography.

"As the text indicates, § 2251(a) contains a specific intent element: the government [is] required to prove that production of a visual depiction was a purpose of engaging in the sexually explicit conduct. [6] *It is simply not enough to say 'the photo speaks for itself and for the defendant and that is the end of the matter*.'" United States v. Palomino-Coronado, 805 F.3d 127, 130–31 (4th Cir. 2015) (emphasis added) (noting that the United States, in that case, had presented the same type of evidence that the Defendant seeks to exclude here, namely, that the Palomino-Coronado "had engaged in sexual activity with [the minor victim] on more than one occasion; that he had taken several non-sexually explicit pictures of her with his cell phone in his basement;

---

6 In this case, the "sexual activity" is the lascivious exhibition of the victim's genitals.

13

and that one sexually explicit picture was taken.")  The Palomino-Coronado Court held further that "a defendant must engage in the sexual activity with the specific intent to produce a visual depiction; it is not sufficient simply to prove that the defendant purposefully took a picture." Id.

The Fourth Circuit has articulated a number of non-exclusive factors that are relevant to glean the Defendant's purpose when he took a photo: "the defendant's concealing from the victim the fact that he was photographing or videotaping her; the defendant's giving instructions concerning positions he wanted the victim to assume and things he wanted her to say while he recorded or photographed their activities; whether there were a number of sexually explicit recordings or photographs; *and whether there was 'purposeful conduct' surrounding the photographic or video equipment used.*" United States v. Blank, 659 F. App'x 727, 728 (4th Cir. 2016) (citing Palomino-Coronado, 805 F.3d at 130–31) (emphasis added).

Here, the Defendant's prior molestation of the victim is not some general bad act with tangential relevance to some general notion of intent, but instead shows his specific intent to take *this specific* lascivious photograph in *this particular* location with *this particular* victim. It shows the Defendant engaged in "purposeful conduct surrounding the photographic equipment." It shows plan, intent, and lack of accident or mistake, among other propositions. It is therefore "relevant to an issue separate from character" and is a "necessary part of the crime or the context of the crime."

14

The Defendant's prior molestation also shows his "knowing possession" of a sexually-explicit image of L.H. Again, the United States must prove that the Defendant "knew of the sexually explicit nature of the material, and that the visual depiction was of actual minors engaged in that sexually explicit conduct." Here, there could be no piece of evidence more probative that the Defendant "knew sexually explicit nature of the material" than, among other facts, (1) he engaged in sexual conduct himself with the victim, (2) that he admitted to being sexually aroused by the victim, and (3) that he took the picture for the purpose of his own sexual arousal.

Finally, the probative value of the prior molestation of the child is not substantially outweighed by the danger of unfair prejudice. First, there is nothing "unfair" about this evidence because it is tied closely to the crime itself, and is indeed inextricably intertwined, as argued above. Second, there will be minimal "prejudice" here. The jury would not be "shocked" by the abuse of L.H. after already (1) seeing that the Defendant had taken nude photographs of L.H., and (2) already having seen images of other child pornography that the defendant possessed. In short, this is child exploitation evidence in a child exploitation trial – an apples-to-apples comparison.

(Remainder of page intentionally left blank)

## Conclusion

For reasons set forth above, the Defendant's prior molestation of his grandson is relevant to show the images were intended to incite lustfulness in the viewer, and inextricably intertwined with the charged offenses. Even if Defendant's prior molestation was not relevant and admissible for those purposes, which it is, it is relevant to prove intent under binding Fourth Circuit precedent. The Court should admit the evidence.

Respectfully submitted this 22nd day of January 2020.

ROBERT J. HIGDON, JR.
United States Attorney

BY: /s/ Charity L. Wilson
CHARITY L. WILSON
Assistant United States Attorney
Criminal Division
300 North 3rd Street, Suite 120
Wilmington, NC  28401
Telephone: (910) 769-1228
Fax: (910) 399-6423
charity.wilson@usdoj.gov
N.C. State Bar No. 31584

16

Case 5:19-cr-00004-BO   Document 42   Filed 01/22/20   Page 16 of 17

CERTIFICATE OF SERVICE

I certify that I have on this 22nd day of January 2020, served a copy of the foregoing Motion upon counsel for defendant through electronic filing via CM/ECF to:

    Katherine Shea
    Assistant Public Defender
    Attorney for Defendant

        BY: /s/ Charity L. Wilson
        CHARITY L. WILSON
        Assistant United States Attorney
        Criminal Division
        300 North 3rd Street, Suite 120
        Wilmington, NC 28401
        Telephone: (910) 769-1228
        Fax: (910) 399-6423
        charity.wilson@usdoj.gov
        N.C. State Bar No. 31584