UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:19-CR-04-1-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | MOTION IN LIMINE |
| | ) | |
| RAUL AYALA JR. | ) | |

## GOVERNMENT'S MOTIONS *IN LIMINE*

NOW comes the United States of America, by and through the United States Attorney for the Eastern District of North Carolina, and moves *in limine* to admit the following three pieces of evidence at trial:

1. the trade inscriptions affixed to defendant's computer and electronic devices as self-authenticating and admissible at trial;

2. the facts and circumstances surrounding several sexually-explicit polaroid photographs of prepubescent boys that the defendant himself produced and possessed; and

3. the statements that led to the investigation of the defendant, namely, L.H.'s conversations with his parents about the defendant's abuse.

**I.  Trade Inscriptions Are Admissible Because they are Self Authenticating, Not Hearsay, and, in Any Event, Subject to the Residual Hearsay Exception.**

The defendant has declined to stipulate to anything during the trial, including the fact that the computer equipment that the defendant used to create child sex abuse materials was not manufactured in North Carolina, notwithstanding that these items themselves state they were manufactured in various foreign countries. The United States is unaware of any non-frivolous argument that these items were manufactured in North Carolina, especially given that the United States is unaware
1

that any of these companies even have manufacturing facilities in North Carolina. Consequently, at trial, the United States will need to introduce evidence related to "interstate nexus" with respect to all three counts. For Counts Two and Three, specifically, the United States will need to prove that the child sex abuse images were "produced using materials that have been mailed, shipped and transported in and affecting interstate and foreign commerce." The United States will seek to admit the following items of electronic media:

1. Seagate Barracuda 80GB Hard Drive, **Made in China trade inscription**;

2. HGST 1TB Hard Drive, **Made in China trade inscription**;

3. Western Digital WD3200 320GB Hard Drive, **Made in Malaysia trade inscription**;

4. Western Digital Scorpio Black 250GB Hard Drive, **Made in Thailand trade inscription**;

5. Western Digital WD10EZEX 1TB Hard Drive, **Made in Thailand trade inscription**;

6. Seagate Momentous 80GB Hard Drive, **Made in China trade inscription**;

7. Dell Inspiron 15 with Western Digital WD10JPVX, 1TB Hard Drive, **Made in China trade inscription**.

The Defendant was provided with notice and information regarding these items in discovery on March 5, 2019.

To avoid wasting the court's trial time and the financial expense to the United States of calling several out-of-state witnesses to establish a fact that is not in serious dispute, the United States will seek to offer the trade inscriptions pursuant to Fed. R. Evid 902(7) and 807 to establish that the items were manufactured outside the

State of North Carolina.

Ordinarily, evidence must be authenticated by extrinsic evidence as a condition precedent to admission. Fed.R.Evid. 901(a). However, Federal Rule of Evidence 902 lists "items of evidence [that] are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted." *Id.; see United States v. Howard-Arias*, 679 F.2d 363, 366 (4th Cir. 1982) (holding that, under the Federal Rules of Evidence, the possibility of fraud, forgery and mis-attribution of certain documents or items is so slight that general requirement of authentication by extrinsic evidence called for by F.R.E. 901 is dispensed with.) One category of self-authenticating evidence covers "Trade Inscriptions and the Like." Fed. R. Evid. 902(7). This refers to "[a]n inscription, sign, tag, or label purporting to have been affixed in the course of business and indicating origin, ownership, or control." *Id.*

There are two steps to the analysis of whether a trade inscription is admissible pursuant to Fed. R. Evid. 902(7); authenticity and hearsay. "The authenticity step is easy." *United States v. Scott*, 2014 WL 2808802, at *3 (E.D. Va. June 20, 2014); *quoting United States v. Brown*, 2009 WL 2090193, at *11 (S.D. Ind. July 13, 2009). *See also United States v. Burdulis*, 753 F.3d 255, 263 (1st Cir. 2014) (holding that "under the federal rules of evidence trade inscriptions are self-authenticating, Fed.R.Evid. 902(7), meaning they 'require no extrinsic evidence of authenticity in order to be admitted,'") (quoting Fed.R.Evid. 902); *United States v. Saguil*, 600 F. App'x 945, 946-47 (5th Cir. 2015), (holding, in a child pornography production case, that the manufacturer's inscription statement "Made in Japan" affixed to the bottom

of a Sony video camera was self-authenticating.) Similarly, here, the inscriptions were applied to the items in the course of business, and they indicate origin of the respective device. They thus fall within Rule 902(7).

In addition, the inscriptions are not hearsay. Hearsay is an out of court statement offered to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). A "statement" is defined as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). As a general rule, hearsay is not admissible, Fed. R. Evid. 802, although there are numerous exceptions that allow for the admission of certain types of hearsay, *see* Fed. R. Evid. 803–807.

Here, the inscriptions are not "statements," and are therefore not hearsay. "It makes much more sense to think of a 'Made in China' inscription on a product (in all likelihood the result of a mechanical, assembly-line mold) as circumstantial evidence that it was indeed made in that country, not as a statement made by the company that is subject to hearsay rules." *Scott*, 2014 WL 2808802, at *3 (admitting a trade inscription on a computer in a child pornography case because the trade inscription was not a "statement"). At least three Circuit Courts of Appeal have similarly held that trade inscriptions were not hearsay. *See United States v. Koch*, 625 F.3d 470, 480 (8th Cir. 2010); *United States v. Thody*, 978 F.2d 625, 630–31 (10th Cir. 1992); *United States v. Alvarez*, 972 F.2d 1000, 1004 (9th Cir. 1992).

But even if the inscriptions were "statements" under Fed. R. Evid. 801(a), which they are not, the residual exception applies here. Fed. R. Evid. 807 states that:

> (a) In General. Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
>
>> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
>>
>> (2) it is offered as evidence of a material fact;
>>
>> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
>>
>> (4) admitting it will best serve the purposes of these rules and the interests of justice.
>
> (b) Notice. The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it.

Fed. R. Evid. 807.

Here, all of these factors weigh in favor of applying the residual exception. Several courts have admitted similar trade inscriptions pursuant to the "residual" hearsay exception under Fed. R. Evid. 807. *See Scott*, 2014 WL 2808802 at 4 (holding that "Made in China" and "Made in Korea" inscriptions on cellphones and a memory card were also admissible under Rule 807); *See United States v. Burdulis*, 753 F.3d 255, 263 (1st Cir. 2014) (holding in child pornography case that "Made in China" inscription on thumb drive was self-authenticating under F.R.E. 902(7) and admissible under F.R.E. 807; court noted that "[c]ommon sense, too, suggests a low probability that someone would stamp 'Made in China' on a device made in the United States and presumably marketed here"); *United States v. Saguil*, 600 F. App'x 945, 946-47 (5th Cir. 2015) (holding, in child pornography production case, that a

manufacturer's inscription "Made in Japan" on a Sony video camera was properly admitted under F.R.E. 807); *United States v. Pina*, 190 F. Supp. 3d 748, 751 (S.D. Ohio 2016) (holding, in a child pornography that a country of origin label was admissible under F.R.E. 807); *United States v. Brown*, 2009 WL 2090193 (S.D. Ind. July 13, 2009); *Saguil*, 600 F. App'x 945 ("the manufacturer's inscription would be sufficient to show the requisite nexus with interstate commerce.") The United States thus moves *in limine* to admit the trade inscriptions to conclusively prove the interstate nexus prong without presenting other evidence or testimony on the "interstate nexus" element.

II. **The Defendant's Sexual Abuse of the Boys in the Pornographic Polaroid Pictures he Produced and Possessed, and the Facts and Circumstances Surrounding his Creation of the Images are Relevant and Admissible for Several Reasons.**

   A. *The Facts Related to the Defendant's Molestation of Other Young Boys in the Child Pornography he Produced and Possessed.*

This case involves multiple victims. Counts One and Two relate to one specific victim – the defendant's grandson – whom the defendant sexually abused multiple times, and of whom he produced child pornography. The United States briefed the basic facts related to those counts in its previous opposition to the defendant's motion *in limine* to exclude the defendant's abuse of his grandson, and hereby incorporates those facts. D.E. 42. The Court, in its previous ruling, denied the defendant's motion *in limine* and held that the defendant's prior abuse of his grandson, to include sexual molestation, is relevant to show the defendant's intent with respect to the pornographic images he produced of his grandson. D.E. 48

But the defendant molested many other children too. Count Three –

Possession of Child Pornography – involves the defendant's possession of pornographic images of multiple other boys whom the defendant sexually abused. In short, the evidence at trial will show that the defendant engaged in a pattern of manipulating and "grooming" male children to be comfortable with sexual contact, and specifically, male-on-male, adult-on-child sexual contact. The defendant would provide alcohol and other benefits to his victims and their families, and would eventually engage in repeated sexual abuse of the victims. That abuse included, but was not limited to, creating sexually-explicit polaroid pictures of the victims, which were "trophies" that documented the abuse. The defendant kept these "trophies" in a briefcase in his attic that was suspended by a pulley system for easy access. Although the defendant's abuse of these victims dates back to the 1960s, his crime in this case – his possession of those images – is a continuing offense. In other words, this is not "other uncharged conduct" – the victims' stories are encompassed by the Possession of Child Pornography charge in Count Three.

B. *The Defendant's Abuse, and Photographs, of R.W.*

Although the United States intends to show pornographic polaroids of multiple child victims, the United States seeks to introduce testimony of only one particular victim from the polaroids – R.W. R.W. will testify that the defendant introduced him to alcohol when R.W. was 10 years old – nearly the same age as the defendant's grandson during the defendant's abuse in this case. After he began to provide R.W. with alcohol, the defendant soon began sexually abusing R.W. The Defendant and R.W. would sleep in the same bed together, and the defendant molested R.W. so frequently between the ages of 10 and 13 that R.W.'s penis was sore from the fondling.
7

On occasions, the defendant would provide R.W. with excessive amounts of alcohol, R.W. would pass out, and then wake up sticky. The defendant took R.W. on camping trips and would film R.W. having sex with girls from R.W.'s school, and also with women who were the defendant's age. The defendant met other boys through R.W. and molested them too. The defendant would target boys whose families were financially strapped, and he would manipulate the victims by providing help to their parents. Between the ages of 10 and 13, the defendant took R.W. to Panama City nearly every weekend where the two would stay in motels and the defendant would sexually abuse R.W.

The defendant produced and possessed pictures of R.W.'s abuse. R.W. will identify himself in a number of nude, sexually-explicit polaroid photographs to which the defendant had easy access, including one image in which R.W. is nude, lying on a bed with an erect penis, holding a dog's nose and mouth close to his genitalia. To the extent necessary, the United States also intends to present other evidence and documents to corroborate R.W.'s testimony.

> C. *The Background of the Polaroid Pictures the Defendant Created and Possessed are Relevant and Admissible as Direct Proof of Multiple Elements of the Offenses with which he's Charged, and Under Fed. R. Evid. 404(b), 414, and 403.*

The United States already briefed this issue at length in its previous opposition to the defendant's prior Motion *in Limine*, so we will not repeat those arguments at length here. The Court should reach the same outcome. Nevertheless, the position is briefly summarized as follows.

The first element the United States must prove with respect to Count 3 – Possession of Child Pornography – is that "the defendant **knowingly** possessed an

8

Case 5:19-cr-00004-BO   Document 60   Filed 06/10/20   Page 8 of 14

item or items that contains an image of **child pornography**." That will require, with respect to R.W., the United States to establish that the image depicts a "lascivious exhibition of [R.W.'s] genitals." To prove an image depicts a "lascivious exhibition of [R.W.'s] genitals," the court will likely instruct the jury on the "*Dost*" factors. *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986) (announcing six factors to help the trier of fact determine whether an image was lascivious). The final *Dost* factor is "whether the visual depiction is ***intended or designed to elicit a sexual response in the viewer***."

Here, the Court should admit the story of how the defendant sexually abused R.W. as a boy, and the story behind the photo, for several reasons. First, it is directly relevant to prove that the image was "intended or designed to elicit a sexual response in the viewer." The defendant will likely contest his intent in creating the image, claiming they were harmless and innocent pictures of naked boys. But the pictures have stories behind them that are critical to a jury's understanding of whether they were "intended or designed to elicit a sexual response in the viewer."

Although an open question in the Fourth Circuit Court of Appeals, numerous other Courts that have addressed the question have held that the context of the image matters – especially when the defendant's narrative relies on the lack of context. *See e.g. United States v. Larkin*, 629 F.3d 177, 183-184 (3d Cir. 2010) (considering the fact that the defendant had sent the images over the Internet to other pedophiles); *United States v. Brown*, 579 F.3d 672, 682-83 (6th Cir. 2009) (considering the circumstances of production of the images and other contemporaneous images of same victim); *United States v. Overton*, 573 F.3d 679, 689 (9th Cir. 2009) (considering the

9

circumstances of production of the images); *United States v. Wallenfang*, 568 F.3d 649, 659 (8th Cir. 2009) (considering the recipients of produced images). "Ignoring the contextual evidence construes the statute too narrowly as it inevitably fails to capture behavior that is 'intended' to exploit children." *Brown*, 579 F.3d at 683.

Second, the defendant's abuse of R.W. is relevant, pursuant to Fed. R. Evid. 404(b), to show the defendant's knowledge, and his sexual interest in children. The United States must prove that the defendant knowingly possessed child pornography. The defendant's personal abuse of R.W. as a boy make it much more likely not only that he knew he possessed the polaroids, but also that he knew the polaroid was child pornography (i.e. intended or designed to elicit a sexual response in the viewer"). Third, for similar reasons, the defendant's prior abuse of R.W. is relevant under Fed. R. Evid. 414 for *any relevant purpose*. That Rule expressly contemplates a situation like this: "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." *Id*. So the abuse of R.W. is not only relevant to prove one of the *Dost* factors, and to prove the defendant's knowledge and intent with respect to the possession of child pornography, but it is relevant under Rule 414 for any purpose.

But the defendant's sexual abuse of R.W. is also relevant and admissible not just with respect to Count Three. It is also relevant and admissible to prove the defendant's knowledge, intent, and for any other purpose, with respect to Counts One and Two. Specifically, Rules 404(b) and 414 provide that, subject to Fed. R. Evid. 403, a defendant's prior child molestation is admissible to prove a defendant's

knowledge and intent (under 404(b)), and "any matter to which it is relevant" (under 414). Here, the defendant appears to contest that he knew the images he produced and possessed of his grandson were "child pornography," as opposed to innocent and harmless "beach/bathroom" pictures of his grandson. He will attempt, by omission, to leave the jury with the misimpression that he is not sexually attracted to little boys. The abuse of R.W. is especially relevant to rebut that defense because it shows that the defendant has a sexual interest in children, and specifically a sexual interest in R.W. as a boy.

Upon determining that the evidence is otherwise relevant for one of the above purposes, the Court must then engage in a Fed. R. Evid. 403 balancing analysis. That Rule provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id*. Here, the probative value is high, and the potential for unfair prejudice is minimal. The probative value is high because (1) the evidence is directly relevant to an element of this offense, (2) the evidence relates to a victim encompassed by a charge in the indictment (as opposed to some other collateral matter), and (3) the defendant is likely to raise a defense – knowledge/intent, and the *Dost* factors – to which this evidence directly relates.

By contrast, the danger for *unfair* prejudice here is low. First, the evidence relates to charged, as opposed to uncharged conduct. Moreover, this is apples-to-apples evidence, not apples-to-oranges. Specifically, this is sexual-abuse-of-a-minor evidence in a sexual-abuse-of-a-minor case. This is not, for example, sexual-abuse-

of-a-minor evidence in a fraud or illegal drug case. The jury will already see that the defendant has sexually abused his grandson and has personally photographed numerous other nude boys. Hearing the untold story of one victim whose life the defendant ruined is not "unfair." In fact, if anything, it would be "unfair" to allow the jury to be given the misimpression, by omission, that the defendant had no sexual interest in children and that the images were "innocent," when the defendant has been sexually abusing boys as early as the 1960s. It would be unfair for the jury ***not*** to know at least one victim's story – a victim for whom the defendant is on trial *in this case*.

For those reasons, and for the reasons and authority cited in the United States' previous response to the defendant's Motion *in Limine*, the evidence related to the defendant's prior sexual abuse of R.W. is relevant and admissible.

### III. The Statements that Led to the Investigation of the Defendant are Admissible Non-Hearsay.

"'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Statements not offered for the truth of the matter, but offered instead to explain why someone did or said something are non-hearsay. *United States v. Love*, 767 F.2d 1052, 1063-64 (4th Cir. 1985) (agent may testify about statements made by other officers which led him to arrest defendant as they were offered to explain the testifying agent's actions, not for their truth). Here, the United States anticipates that L.H.'s mother would testify that L.H. told her about his grandfather's abuse, and that she contacted Cary Police Department as a result of L.H.'s statements. This is

12

Case 5:19-cr-00004-BO   Document 60   Filed 06/10/20   Page 12 of 14

integral part of the story because it shows how the abuse was first discovered, and why the law enforcement officers did what they did. It is not offered for the truth of the matter – indeed, the defendant himself has admitted to the abuse of his grandson. The United States seeks to admit L.H.'s statement solely for the non-hearsay purpose of explaining why L.H.'s mother called the Cary Police, and why the Cary Police obtained and executed a search warrant at the defendant's house.

## CONCLUSION

For the preceding reasons, the United States moves *in limine* to admit (1) the trade inscriptions on the defendant's devices for the purpose of establishing the interstate nexus element, (2) the story behind the pictures that the defendant produced and possessed of R.W. when he was a boy, and (3) L.H.'s statements to his mother about his grandfather's abuse, for the purpose of explaining why L.H.'s mother called the police.

Respectfully submitted, this the 10th day of June, 2020.

                ROBERT J. HIGDON, JR.
                United States Attorney

      BY:  */s/ Charles D. Schmitz*
              CHARLES D. SCHMITZ
              Trial Attorney
              Criminal Division
              United States Department of Justice
              1400 New York Avenue, Ste. 600
              Washington, DC 20005
              E-mail: Charles.Schmitz2@usdoj.gov
              Telephone: 202-598-8067
              CT Bar NO. 429457

CERTIFICATE OF SERVICE

       I hereby certify that I have this date, June 10, 2020, served a copy of the foregoing document upon the Defendant in this action either electronically or by placing a copy of same in the United States mail, postage prepaid, and addressed to counsel for Defendant as follows:

Attorney for Defendant:
Katherine Shea
Assistant Public Defender
Attorney for Defendant

                             BY:   */s/ Charles D. Schmitz*
                                     CHARLES D. SCHMITZ
                                     Trial Attorney
                                     Criminal Division
                                     United States Department of Justice
                                     1400 New York Avenue, Ste. 600
                                     Washington, DC 20005
                                     E-mail: Charles.Schmitz2@usdoj.gov
                                     Telephone: 202-598-8067
                                     CT Bar NO. 429457